UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————  )
                          )
VAN MILLER,               )
                          )
     Plaintiff,           )
                          )
     v.                   )        Civil Action No. 08-1556 (RWR)
                          )
INSULATION CONTRACTORS, INC.  )
et al.,                   )
                          )
     Defendants.          )
——————————————————————————)


MEMORANDUM OPINION AND ORDER

Van Miller brings claims of racial discrimination in employment under the District of Columbia Human Rights Act ("DCHRA") and 42 U.S.C. § 1981 against defendants Insulation Contractors, Inc., doing business as Capitol Insulation Services of Maryland ("Capitol"), and Gregory Mauk.  The defendants have moved to dismiss Miller's DCHRA claim for lack of subject matter jurisdiction and to transfer venue.  Because the complaint alleges discriminatory acts within the District of Columbia, the allegations pled do not clearly indicate that the DCHRA claim is barred by the statute of limitations, and the defendants have not shown that transferring venue to the District of Maryland is in the interest of justice, the defendants' motion to transfer and for partial dismissal will be denied.

-2-

BACKGROUND

Miller worked as a carpenter for Capitol on projects in
Virginia, Washington, D.C., and Maryland from 1993 to 2008.
(Compl. ¶ 3.)  Mauk became his supervisor in 2001 when Miller was
working in Virginia.  From 2004 to late 2007, Miller worked on
job sites mostly in the District of Columbia.  (Pl.'s Opp'n to
Defs.' Mot. to Partially Dismiss Pl.'s Compl. & Transfer Venue
("Pl.'s Opp'n"), Decl. of Van Miller ("Miller Decl.") ¶ 3.)  In
2008, Miller worked for several weeks on projects in Maryland
until he was laid off in February of 2008.  (Id. ¶¶ 3, 4.)
Beginning in 2001 and continuing throughout Miller's employment,
Mauk allegedly threatened to fire Miller and made racist comments
and death threats to Miller in person when visiting job sites or
communicating over Capitol's radio system.  (Id. ¶¶ 1, 3, 7;
Compl. ¶¶ 7-9.)  Paul Adams, an operations manager at Capitol's
Maryland office, decided to lay Miller off based on input from
Mauk.  (Defs.' Errata to Defs.' Mot. to Partially Dismiss Pl.'s
Compl. & Transfer Venue, Ex. A, Decl. of Paul Adams ("Adams
Decl.") ¶ 4.)  Mauk informed Miller of his termination while
Miller was working on a project in Maryland.  (Defs.' Mem. of P.
& A. in Supp. of Defs.' Mot. to Partially Dismiss Pl.'s Compl. &
Transfer Venue ("Defs.' Mem."), Ex. B, Decl. of Gregory Mauk
("Mauk Decl.") ¶ 6.)  Miller and Mauk reside in Maryland and

-3-

Capitol's only office is located in Maryland.  (Id. ¶ 2; Adams
Decl. ¶ 5; Compl. ¶ 3.)

On July 10, 2008, Miller filed his complaint in the Superior
Court of the District of Columbia bringing DCHRA and § 1981
claims alleging that the defendants harassed him, removed him
from his position as a foreman, and laid him off because of his
race.  (Compl. ¶¶ 8, 11, 12.)  The defendants removed the action
to this court, and have moved under Federal Rule of Civil
Procedure 12(b)(1) to dismiss Miller's DCHRA claim and to
transfer the action to the District of Maryland under 28 U.S.C.
§ 1404(a).

DISCUSSION

I.   VENUE

A case may be transferred to another venue under 28 U.S.C.
§ 1404(a) "[f]or the convenience of parties and witnesses, in the
interest of justice[.]"[1]  28 U.S.C. § 1404(a); see Piper Aircraft
Co. v. Reyno, 454 U.S. 235, 253 (1981).  The moving party has the

_____

[1] Although the defendants have moved to dismiss Miller's
DCHRA claim for lack of subject matter jurisdiction, a court has
discretion to resolve the venue issue before addressing whether
subject matter jurisdiction exists over a claim.  Aftab v.
Gonzalez, Civil Action No. 07-2080 (RWR), 2009 WL 368660, at *2
(D.D.C. Feb. 17, 2009); see also Pub. Citizen v. U.S. Dist. Court
for the District of Columbia, 486 F.3d 1342, 1348 (D.C. Cir.
2007) (noting that Sinochem Int'l Co. v. Malaysia Int'l Shipping
Corp, 549 U.S. 422 (2007) "firmly establishes that certain
non-merits, nonjurisdictional issues may be addressed
preliminarily, because jurisdiction is vital only if the court
proposes to issue a judgment on the merits" (internal quotation
marks and brackets omitted)).

-4-

burden of establishing that a transfer is proper, <u>Onyeneho v.
Allstate Ins. Co.</u>, 466 F. Supp. 2d 1, 3 (D.D.C. 2006), "and the
motion must not be lightly granted."  15 Charles Alan Wright et
al., <u>Federal Practice & Procedure: Jurisdiction</u> § 3848 at 163 (3d
ed. 2007).  As a threshold requirement, the transferee court must
be in a district where the action "might have been brought."  <u>See</u>
28 U.S.C. § 1404(a).  If it is, then a court has broad discretion
to balance case-specific factors related to the public interest
of justice and the private interests of the parties and
witnesses.  <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 29-30
(1988); <u>Demery v. Montgomery County, MD</u>, Civil Action No. 08-1304
(RWR), 2009 WL 692604, at *3 (D.D.C. Mar. 18, 2009).  Ultimately,
if the balance of private and public interests favors a transfer
of venue, then a court may order a transfer.

    A.  <u>Venue in the District of Maryland</u>

    A civil action such as this one in which jurisdiction is not
founded solely on diversity of citizenship may be brought

> only in (1) a judicial district where any defendant
> resides, if all defendants reside in the same State,
> (2) a judicial district in which a substantial part of
> the events or omissions giving rise to the claim
> occurred, or a substantial part of property that is the
> subject of the action is situated, or (3) a judicial
> district in which any defendant may be found, if there
> is no district in which the action may otherwise be
> brought.

28 U.S.C. § 1391(b).  Capitol has its only office in Maryland
(Adams Decl. ¶ 5), and Mauk resides in Maryland.  (Mauk Decl.

-5-

¶ 2.)  Moreover, Capitol made the decision to terminate Miller's
employment in Maryland and Mauk worked out of Capitol's office in
Maryland.  (Id. ¶¶ 4, 5.)  Miller also learned of his termination
while working on a construction site in Maryland.  (Id. ¶ 6.)
Because all defendants reside in Maryland and a substantial
adverse employment action complained of occurred in Maryland,
this action could have been brought, then, in the transferee
district.

    B.  Private interests

    The private interest factors typically considered include:
1) the plaintiff's choice of forum, 2) the defendant's choice of
forum, 3) where the claim arose, 4) the convenience of the
parties, 5) the convenience of the witnesses, particularly if
important witnesses may actually be unavailable to give live
trial testimony in one of the districts, and 6) the ease of
access to sources of proof.  Montgomery v. STG Int'l, Inc., 532
F. Supp. 2d 29, 32-33 (D.D.C. 2008).

    In the balance of private and public interests, a
"'plaintiff's choice of forum is ordinarily accorded deference.'"
Demery, 2009 WL 692604, at *3 (citing Aftab v. Gonzalez, Civil
Action No. 07-2080 (RWR), 2009 WL 368660, at *3 (D.D.C. Feb. 17,
2009)).  "When two potentially proper venues are involved, the
plaintiff's choice of forum is often accorded substantial
deference, particularly where the plaintiffs have chosen their

home forum and many of the relevant events occurred there."

Demery, 2009 WL 692604, at *3.  However, if a plaintiff is not a

resident of the forum and "most of the relevant events occurred

elsewhere," this deference is weakened.  Hunter v. Johanns, 517

F. Supp. 2d 340, 344 (D.D.C. 2007).[2]  Transfer is supported when

"the material events that constitute the factual predicate for

the plaintiff's claims occurred" in the transferee district.

Kafack v. Primerica Life Ins. Co., 934 F. Supp. 3, 6-7 (D.D.C.

1996).  When the events occur in more than one district, a court

can consider which jurisdiction has the stronger factual nexus to

the claims.  See O'Shea v. Int'l Bhd. of Teamsters, Civil Action

No. 04-207 (RBW), 2005 WL 486143, at *3 (D.D.C. Mar. 2, 2005).

The defendants assert alternately that "all" or "the

majority of the [material] events giving rise to this matter

occurred outside of the District."  (Cf. Defs.' Mem. at 9, with

Defs.' Reply at 4.)  Maryland was where Adams consulted with Mauk

about Miller's status, Adams decided to fire Miller, and Mauk

told Miller of the decision.  (Adams Decl. ¶¶ 4, 5; Mauk Decl.

---

[2] While Hunter referred to "'a strong presumption against
disturbing [a] plaintiff['s] initial choice of forum[,]'" 517 F.
Supp. 2d at 344 (quoting Pain v. United Techs. Corp., 637 F.2d
775, 784 (D.C. Cir. 1980)), it may be that that formulation had
greater applicability to motions to dismiss for forum non
conveniens before § 1404(a) was enacted allowing transfers more
freely than the forum non conveniens doctrine allowed dismissals.
See 15 Charles Alan Wright et al., Federal Practice & Procedure:
Jurisdiction § 3848 at 160-61 (3d ed. 2007) (tracing the
formulation to Gulf Oil Co. v. Gilbert, 330 U.S. 501, 508 (1947),
a forum non conveniens case).

¶¶ 5, 6.)  Miller does not dispute Mauk's claim that Miller's removal as a foreman occurred in Maryland.  The material events, though, involved more than just the demotion and the firing; they also involved the years of discriminatory harassment.  While Miller concedes that some acts of discrimination occurred in Maryland, he claims that "[t]he majority of the racial harassment during the last four years occurred in the District of Columbia[.]"  (Pl.'s Opp'n at 6.)  Miller's declaration clearly alleges that throughout the period between 2004 and 2007 when Miller worked mostly in D.C., Mauk visited D.C. job sites regularly and racially demeaned and threatened Miller each time.  (Miller Decl. ¶¶ 3, 7.)  These facts do not establish either quantitatively or qualitatively that Maryland is the more significant locus of material events underlying Miller's claims.  And although Miller and Mauk are both Maryland residents and Capitol's only office is there, that diminishes but does not destroy deference shown to Miller's choice of forum.  The defendants, then, have not shown that the first three private interest factors on balance tilt toward transfer.

Regarding the remaining three private interest factors, neither party asserts that either district would be inconvenient to the parties, witnesses, and sources of proof.  Capitol's personnel files, the parties, and one identified witness, Adams, are all located in Maryland.  However, the geographic distance

between the District of Maryland's courthouses and the District of Columbia is small and it is unlikely that a transfer would materially affect the convenience of the parties or witnesses, or the ability to obtain sources of proof.  Barham v. UBS Fin. Servs., 496 F. Supp. 2d 174, 179 (D.D.C. 2007); Great Socialist People's Libyan Arab Jamahiriya v. Miski, 496 F. Supp. 2d 137, 144-45 (D.D.C. 2007).  On balance, these final three private interest factors favor neither side.

C.   Public interests

The public interest factors usually weighed in considering a motion to transfer include: 1) the transferee's familiarity with the governing laws; 2) the relative congestion of each court; and 3) the local interest in deciding local controversies at home. Liban v. Churchey Group II, L.L.C., 305 F. Supp. 2d 136, 143 (D.D.C. 2004).

Since all federal courts are presumed to be equally familiar with the law governing federal statutory claims, see id. (citing In re Korean Air Lines Disaster of Sept. 1, 1983, 829 F.2d 1171, 1175 (D.C. Cir. 1987)), neither venue is favored for adjudicating Miller's § 1981 claim.  A court in the District of Columbia, though, may be more familiar with the law governing Miller's DCHRA claim.  See Trout Unlimited v. U.S. Dep't of Agric., 944 F. Supp. 13, 19 (D.D.C. 1996); Armco Steel Co. v. CSX Corp., 790

-9-

F. Supp. 311, 324 (D.D.C. 1991).  This factor tilts slightly toward venue in this district.

The defendants argue that cases are resolved more quickly in the District of Maryland than in the District of Columbia. (Defs.' Mem. at 12.)  In comparison to the District of Columbia, the transferee district in 2007 had lower median times from filing to disposition and from filing to trial, but had a slightly larger total case load.  (Defs.' Mem., Ex. E, U.S. District Court - Median Time Intervals from Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending March 31, 2007 at 1.)  This factor weighs in favor of transfer.

Finally, each district shares some local interest in deciding this case.  Interest in the duration and depth of the alleged harassment is centered more in the District of Columbia, while the interest in the more discreet but equally significant acts of demotion and termination is centered more in Maryland. Thus, a quantitative measure of the material events that make up the claims' factual predicate may be more connected to this district, but a qualitative measure would tilt this factor toward neither district.  In any event, the defendants have not shown that this factor favors transfer.

Accordingly, venue is proper in the District of Columbia, and the scales balancing the public and private interests either

tilt slightly toward venue in this district or are at equipoise.
In a tie, a plaintiff prevails.  The defendant's motion to
transfer will be denied.

II.  MOTION TO DISMISS DCHRA CLAIM

    A.  <u>Jurisdiction</u>

        The defendants also move to dismiss Miller's DCHRA claim for
lack of subject matter jurisdiction arguing that the alleged
discriminatory acts did not occur in the District of Columbia.
"On a motion to dismiss for lack of subject-matter jurisdiction
pursuant to Rule 12(b)(1), the plaintiff bears the burden of
establishing that the court has subject-matter jurisdiction."
<u>Larsen v. U.S. Navy</u>, 486 F. Supp. 2d 11, 18 (D.D.C. 2007).
"Because subject-matter jurisdiction focuses on the court's power
to hear the claim, however, the court must give the plaintiff's
factual allegations closer scrutiny when resolving a Rule
12(b)(1) motion."  <u>Jin v. Ministry of State Sec.</u>, 475 F. Supp. 2d
54, 60 (D.D.C. 2007).  The court may look beyond the complaint,
but "must accept as true the allegations in the complaint and
consider the factual allegations of the complaint in the light
most favorable to the non-moving party."  <u>Short v. Chertoff</u>, 526
F. Supp. 2d 37, 41 (D.D.C. 2007).

        "The purpose of the [DCHRA] is 'to secure an end *in the*
*District of Columbia* to discrimination for any reason other than
that of individual merit. . . .'"  <u>Matthews v. Automated Bus.</u>

Sys. & Servs., Inc., 558 A.2d 1175, 1180 (D.C. 1989) (quoting
D.C. Code § 1-2501).  The DCHRA makes discriminatory practices in
employment unlawful.  Id.  "[T]he most important factor in
determining whether a court has subject matter jurisdiction over
a claim filed pursuant to the DCHRA is not whether the plaintiff
was actually employed in the District of Columbia but whether the
alleged discriminatory acts occurred in the District."  Quarles
v. Gen. Inv. & Dev. Co., 260 F. Supp. 2d 1, 20 (D.D.C. 2003).
The DCHRA's broad language has been interpreted to "cover all
discrimination concerning jobs located in the District of
Columbia[.]"  Peterson v. Archstone, Civil Action No. 08-1326
(RWR), 2009 WL 511145, at *4 (D.D.C. Feb. 27, 2009).  For
example, the DCHRA covers a claim where a plaintiff applied for a
job that was located within the District of Columbia even though
the decision to discriminate was made outside the District.
Quarles, 260 F. Supp. 2d at 20.  The fact that the job was to be
performed in the District of Columbia is a sufficient connection
to assert that "discrimination occurred in the District of
Columbia."  Id.; see also Peterson, 2009 WL 511145, at *4
(stating that the plaintiff pled a viable DCHRA claim where she
alleged that the defendant discriminated against her by not
hiring her for any position in the District of Columbia).

    The defendants argue that Miller's DCHRA claim should be
dismissed because no actionable events occurred in the District

-12-

of Columbia.  However, Miller asserts that Mauk made racist threats and comments "on a regular basis and that these acts of race discrimination largely occurred in the District of Columbia for a period of almost four years." (Pl.'s Opp'n at 3.)  While the complaint does allege that discriminatory actions occurred in Maryland, such as Miller's demotion and termination, the complaint alleges that Miller had worked on projects for Capitol in the District of Columbia and that Mauk made discriminatory remarks and threatened to fire Miller "on a daily basis." (Compl. ¶ 8.)  Moreover, Miller contends that he worked at several job sites within the District of Columbia from 2004 to 2007 and that "Mr. Mauk supervised all of these jobs and visited the D.C. job sites regularly." (Miller Decl. ¶ 7.)  During these visits, Miller claims, Mauk made racist comments and threats to him.  Id.  These allegations of Mauk's discriminatory conduct toward Miller establish a sufficient connection to the District of Columbia and provide subject matter jurisdiction over Miller's DCHRA claim.

    B.  <u>Statute of limitations</u>

    The defendants argue that even if acts occurred within the District of Columbia, the complaint has specified none as occurring on a date within the statute of limitations, thus depriving the court of subject matter jurisdiction over the DCHRA claim.  However, "time prescriptions 'are not properly typed

-13-

"jurisdictional"'" and a motion to dismiss a DCHRA claim as time-barred does not involve the court's jurisdiction.  Ibrahim v. Unisys Corp., 582 F. Supp. 2d 41, 45 n.3 (D.D.C. 2008) (quoting Scarborough v. Principi, 541 U.S. 401, 413-14 (2004)) (stating that a statute of limitations is not jurisdictional because jurisdiction focuses on the classes of cases and persons falling within the court's adjudicatory authority).  Rather, "'[a] defendant may raise the affirmative defense of statute of limitations via a Rule 12(b)(6) motion when the facts that give rise to the defense are clear from the face of the complaint.'"  Turner v. Afro-Am. Newspaper Co., 572 F. Supp. 2d 71, 72 (D.D.C. 2008) (quoting DePippo v. Chertoff, 453 F. Supp. 2d 30, 33 (D.D.C. 2006)) (analyzing a motion to dismiss an age discrimination claim for failure to file within the ninety-day limit under Rule 12(b)(6)).  Thus, the defendants' argument that a statute of limitations violation deprives the court of subject matter jurisdiction fails.  The defendants would fare no better, though, bringing their motion under Rule 12(b)(6).

In order to survive a motion to dismiss under Rule 12(b)(6), the plaintiff's allegations in the complaint "must be enough to raise a right to relief above the speculative level[.]"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The complaint must be construed in the light most favorable to the plaintiff and "the court must assume the truth of all well-pleaded

-14-

allegations." <u>Warren v. District of Columbia</u>, 353 F.3d 36, 39
(D.C. Cir. 2004).  If a plaintiff fails to allege sufficient
facts to support a claim, that claim must be dismissed.  <u>See</u>
<u>Twombly</u>, 550 U.S. at 555-56.  "A court should grant a
pre-discovery motion to dismiss on limitations grounds 'only if
the complaint on its face is conclusively time-barred,' and the
parties do not dispute when the limitations period began."
<u>Turner</u>, 572 F. Supp 2d. at 72 (quoting <u>DePippo</u>, 453 F. Supp. 2d
at 33) (noting that a plaintiff must be given the benefit of all
legitimate inferences derived from the facts alleged).

        Under D.C. Code § 2-1403.16, the statute of limitations for
DCHRA claims is one year and starts running from the occurrence
or the discovery of the discriminatory act.  While Miller does
not provide specific dates for the discriminatory acts that
allegedly occurred in the District of Columbia, a complaint need
not contain detailed factual allegations "because simplified
notice pleading is made possible by the liberal opportunity for
discovery and the other pre-trial procedures established by the
Rules to disclose more precisely the basis of both claim and
defense [and] to define more narrowly the disputed facts and
issues."  <u>Lewis v. District of Columbia</u>, 535 F. Supp. 2d 1, 11
(D.D.C. 2008) (internal quotation marks omitted).  A plaintiff is
not required to plead all elements of the prima facie case nor
"plead law or match facts to every element of a legal theory."

Id. at 9 (quoting Krieger v. Fadely, 211 F.3d 134, 136 (D.C. Cir. 2000) and citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002)).  "'Because racial discrimination in employment is a claim upon which relief can be granted, . . . "I was turned down for a job because of my race" is all a complaint has to state to survive a motion to dismiss under [Rule] 12(b)(6).'"  Potts v. Howard Univ. Hosp., 258 F. App'x 346, 347 (D.C. Cir. 2007) (quoting Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1115 (D.C. Cir. 2000) and Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998)) (reversing the district court's dismissal because "it was not clear from the face of the complaint that [plaintiff] in fact acted outside the relevant statute of limitations").

Construed in the light most favorable to Miller, this complaint on its face does not establish that Miller brought his DCHRA claim too late.  The complaint alleges that Miller worked for Capitol in Virginia, the District of Columbia, and Maryland from 1993 to February 2008 and that Mauk racially harassed and threatened Miller on numerous occasions.  (Compl. ¶¶ 3, 7.) After being promoted, Mauk allegedly "intensified his harassment by threatening to fire [Miller] on a daily basis."  (Id. ¶ 8.) While the complaint does not provide specific dates of all discriminatory acts, nothing in the complaint forecloses proof that discriminatory acts occurred in this district during the one-year period before Miller filed this action on July 10,

-16-

2008.[3]  Whether that happened must be developed once the parties

undertake discovery.

<u>CONCLUSION AND ORDER</u>

The balance of public and private interest factors does not

favor transfer of this case to the District of Maryland.  Miller

has established a sufficient connection to the District of

Columbia for subject matter jurisdiction over his DCHRA claim and

the complaint does not conclusively show that his DCHRA claim is

barred by the statute of limitations.  Accordingly, it is hereby

---

[3] Even if the complaint alleges a "hostile work
environment," <u>see</u> <u>Portis v. First Nat'l Bank of New Albany,
Miss.</u>, 34 F.3d 325, 332 n.14 (5th Cir. 1994) (stating that "[a]
plaintiff need not use the magic words 'hostile work environment'
[in her pleadings] to raise this claim"), the result would be no
different.  In the District of Columbia, "[a] hostile work
environment claim is comprised of a series of separate acts that
collectively constitute one 'unlawful employment practice.'"
<u>Lively v. Flexible Packaging Ass'n.</u>, 830 A.2d 874, 891 (D.C.
2003) (quoting <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S.
101, 124 (2002)).  "All of the component acts comprising the
hostile work environment claim need not have taken place within
the one-year period, but at least one act contributing to the
claim must occur within that period in order for the filing to be
timely."  <u>Lively</u>, 830 A.2d at 891-92 (internal citation and
quotation marks omitted).  A hostile work environment claim "is
treated as an indivisible whole for purposes of the limitations
period, even if an initial portion of that claim accrued outside
the limitations period."  <u>Id.</u> at 892.

-17-

ORDERED that the defendants' motion [5] to partially dismiss
the plaintiff's complaint and transfer venue be, and hereby is,
DENIED.

SIGNED this 21st day of April, 2009.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge